BUCK CREEK COAL MINING CO. et al. v. JOHNSON.

No. 32641. June 10, 1947.

*181 P. 2d 1003.*

Alpheus Varner, of Poteau, and Anton Koch, of Henryetta, for plaintiffs in error.

Gilliland, Ogden, Withington, Shirk & Vaught and Leo J. Williams, all of Oklahoma City, for defendant in error.

ARNOLD, J. Evelyn Johnson, the widow of Thomas J. Johnson, deceased, brought this action for herself and for the minor children of plaintiff and deceased to recover damages for the

wrongful death of Thomas J. Johnson, deceased, under the provisions of 12 O. S. 1941 §§ 1053 and 1054. The parties will be herein referred to by their trial court designations.

On the trial of the case the evidence, in support of the allegations of the negligence alleged, disclosed substantially the following facts: That Thomas J. Johnson was 41 years of age at the time of his death, was in good health and sound bodily condition with a life expectancy of 23 years; that he was employed by the Buck Creek Coal Mining Company as a "rope-rider," his duties being to take cars into the mine, load them and return them to the surface; that the cars were operated on a narrow gauge track laid from the surface down into the mine along the slope therein and were controlled by a steel cable on a winch located in a building on the surface near the mouth of the mine; that in connection with the operation of these cars into and out of the mine the company had installed a signal system paralleling the tracks on which the cars ran consisting of two wires electrically charged and attached to posts along the slope of the mine, the wires being placed parallel to each other and three or four inches apart; that the rope-rider had what is called a bell stick which was used by him to communicate signals to the hoist engineer in the building on the surface, he being the only employee having a bell stick; that the railway track and the signal wires were extended from time to time to keep pace with the progress of mining operations but were never extended beyond the point where current mining operations were then in progress for technical reasons shown in the evidence but unnecessary to here set out; that on the date of the accident the slope in the mine had reached a distance of approximately 600 feet from the surface and the track and signal wires extended about the same distance; that on the morning of the accident, in addition to deceased, Thomas J. Johnson, the others employed and then working in the mine

were Joe Comisky, Eddie Richardson, Ted Lunsford, and Raymond Wiles; that Comisky and Wiles were working in what is called Room 5 near the foot of the slope and deceased brought a car from the surface to Room 5, where it was loaded with muck and rock from the mining operations; that deceased then gave a signal to the hoist engineer and the car was moved out of Room 5 and up the slope a distance of approximately 70 feet, where it was stopped upon a signal from the deceased, and Wiles and the deceased began loading rock from the sides of the slope into the car; that Wiles was at the rear end of the car and deceased was at the front end of the car; that the ceiling of the slope at this point was less than five feet high and the signal wires were near the ceiling and about eight inches from the west wall of the slope; that in lifting rock into the car the deceased stood with his left foot inside the west rail of the car track with his knee or leg against the front bumper of the car; that while in this position and while in the act of lifting a rock into the car, the car suddenly started forward up the slope knocking deceased to his back and running over him resulting in injuries which caused his death; that the other men working there were unable to remove deceased from beneath the car without having the car moved backward down the slope; that this was accomplished by Mr. Wiles taking hold of the two signal wires and bringing them together with his hand thus closing the electrical circuit and giving the signal to the hoist engineer on the surface to back the car down the slope; that the signal wires had been installed by Mr. Richardson under the direction of Mr. Hetherington, the mine boss, and he testified that they were installed parallel to each other, one on each side of the supporting post; that there was testimony to the effect that on the morning of the accident the deceased changed the position of these signal wires on the post at the point where the accident occurred, placing both wires on the same side of the post and one above the

other. This was the basis of the defense on contributory negligence, it being the theory of defendants that in raising up to load the rock in the car the deceased came in contact with the lower wire with his head or shoulder thus pressing the wires together and causing a starting signal to be given to the hoist man on the surface. Other than this testimony there is nothing in the record which accounts for the sudden starting of the car at the time of the accident.

The trial resulted in a verdict and judgment in favor of plaintiff for $7,500, and this appeal followed.

For reversal of the judgment defendants present and argue but two propositions in their brief, as follows:

"The court erred in giving instruction No. 3. Such instruction was beyond the issues raised by the pleadings in the case. Such instruction was bottomed on a statute that has no application to the situation in the case at bar. Such instruction indicated that the court itself was confused about the proper law of the case, and under the evidence amounted in substance to a directed verdict."

"The court below should have granted a new trial because of improper arguments made to the jury by counsel for the plaintiff below. Specifically, counsel for the plaintiff argued to the jury that the defendants were negligent in not having a telephone system installed in the mine, and that was done despite the fact that evidence to that effect had been stricken from the record and the jury had been admonished not to consider it."

It is not suggested or argued that the evidence is insufficient in any respect.

Under the first proposition defendants urge that the trial court committed reversible error in giving to the jury instruction No. 3, which reads:

"You are instructed that under the laws of this state, where there is machinery or other mechanical haulage in any slope or haulage way in a coal mine, that the operators of said mine shall maintain and provide a manway at least five feet high and five feet wide which shall be kept open at all times and in good condition for traveling and free of loose coal, rock and debris, and that a violation of this provision of law constitutes negligence on the part of the defendant coal company and if as a direct and proximate result of such failure, if any, plaintiff's decedent was fatally injured, the plaintiff would be entitled to recover, unless you also find by a preponderance of the evidence that said decedent was himself guilty of contributory negligence."

Their objection to the instruction is thus expressed:

"The vice of the instruction lies in the fact that the slope and the manway are two entirely different parts of a coal mine. The accident in this case happened on the slope. There was no evidence whatsoever with reference to the manway and the record is silent about whether or not the mine in question has a manway or not."

In the preliminary paragraphs of the court's instructions the issues in the case were specifically set forth and consisted only of negligence, if any, on the part of the defendants and contributory negligence, if any, and assumption of risk by the deceased. No criticism is voiced as to the proper form and language of the instructions thus submitting the issues of fact to the jury. It is conceded in defendants' brief that instruction No. 3 is a correct statement of the substance of 45 O. S. 1941 § 116, as amended by the Legislature in 1943. It is true, as urged by defendants, that this instruction was foreign to any issue of fact submitted to the jury by the court's instructions and is foreign to any issue presented by the evidence in the case. It does not follow, however, that the giving of this instruction constitutes reversible error. Before this instruction could be fatal to the judgment rendered on the verdict, it must appear that the instruction misled the jury in its consideration of the case and that its verdict was substantially the result of con-

fusion of the jury caused by such instruction. The accident forming the basis of this action occurred on the slope of the mine and all of the testimony in the case has reference to the slope insofar as that testimony relates to the alleged negligence of the defendants in their mining operations. We think the instruction complained of falls squarely within the rule announced by this court in Beard v. Bradshaw, 141 Okla. 50, 283 P. 990, that the giving of an instruction which states a correct proposition of law, but which has no application to the issue involved or the proof, will not warrant a reversal of the judgment, unless it is apparent that such instruction misled the jury. See Chicago, R. I. & P. Ry. Co. v. Pruett, 67 Okla. 219, 170 P. 1143; Weller v. Dusky, 51 Okla. 77, 151 P. 606; Chickasaw Compress Co. v. Bow, 47 Okla. 576, 149 P. 1166; Pearson v. Yoder, 39 Okla. 105, 134 P. 421; Payne v. McCormick Harvesting Mach. Co., 11 Okla. 318, 66 P. 287.

Defendants in support of their argument under the first proposition cite and quote from several decisions of this court, but an examination of those cases discloses that the instructions of the court resulting in reversal were instructions erroneously submitting issues of fact to the jury, or, as in the case of Sinclair Prairie Oil Co. v. Stell, 190 Okla. 344, 124 P. 2d 255, where the action was based upon a specific statute which this court held had no application to the character of injury there disclosed and was not intended to protect the injured party in that case under the circumstances there shown.

Under the second proposition it is urged by defendants that the judgment should be reversed because of improper remarks by counsel for plaintiff in his closing argument to the jury. The language used by counsel in his closing argument is not disclosed by the record but it is disclosed by statement of the trial judge that counsel made reference to the fact that there was no telephone system in the mine and that it would have been a simple matter to have put telephones therein so that the engineer might be called when cars were needed to be moved. Plaintiff did not allege in her petition that defendants were negligent in that they had failed to install a telephone system in the mine. During the trial of the cause some evidence was introduced concerning the fact that there was no telephone system in the mines that could be used for signaling purposes. Such testimony was stricken upon motion of the defendant and the jury was instructed not to consider the evidence in this regard. The trial judge denied the motion of the defendant to declare a mistrial because the jury had theretofore been instructed not to consider any evidence with reference to telephones or the failure of the company to have telephones installed. The trial judge was of the opinion that the argument in this respect, though under all the circumstances improper, was not prejudicial. He evidently entertained the same view when the motion for new trial was presented. This appears to be a correct view of the matter. We are unable to say that the argument made was probably prejudicial.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, OSBORN, BAYLESS, CORN, and GIBSON, JJ., concur.