**PINE ISLAND RV RESORT, INC., a not for profit corporation, Appellee/Cross–Appellant,**

v.

**RESORT MANAGEMENT, INC. d/b/a Pine Island Resort Sales Company, and Richard M. Toohey, Appellees/Cross–Appellants,**

v.

**Federal Consumer Services, Inc., Appellant.**

**No. 83741.**

Supreme Court of Oklahoma.

July 16, 1996.

As Corrected July 24, 1996.

Kathy Lungren Baker, Grove, for Appellant Federal Consumer Services, Inc.

Erin Lanway, Grove, for Appellees/Cross–Appellants Resort Management, Inc.

Vivian C. Hale, Stuart D. Campbell, Tammy D. Barrett, Tulsa, for Appellee/Cross–Appellant Pine Island RV Resort, Inc.

HODGES, Justice.

## I. ISSUES

The issues before this Court are (1) whether the trial court committed reversible error by failing to orally instruct the jury, and (2) whether the verdict is supported by the evidence. We find the trial court did not commit reversible error by failing to read the instructions to the jury and the verdict is supported by the evidence.

## II. FACTS

In 1984, Quaker Life Insurance Company (Quaker Life) organized a real estate project known as Pine Island RV Resort, Inc. (Pine Island), a campground for campers and RV owners. Quaker Life had the right to sell memberships to Pine Island. Some of the memberships Quaker Life sold were financed under a contract. Quaker Life assigned its interest in these contracts to the Oxford Finance Companies, Inc. (Oxford). At the same time, Oxford acquired the right to sell a membership underlying a contract if the contract was cancelled.

Quaker Life went into receivership. In the summer of 1987, Resort Management, Inc. (RMI), a corporation owned by Richard Toohey (Toohey), purchased one-half of Pine Island's realty at a receivership sale. At the sale, he also purchased the exclusive right to sell approximately 2,207 unsold memberships.

In August, 1987, Pine Island and RMI entered into an agreement (1987 Contract) whereby RMI conveyed the real estate back to Pine Island in return for the "exclusive, continuous, and non-revocable right to sell all unsold and repossessed Pine Island memberships (approximately 2200 unsold)." RMI agreed to "provide all monies needed for the improvement or construction of the remaining unfinished sites" with Pine Island having approval of the improvements. Both parties agreed to cooperate in the sale of memberships and in the completion of the resort. The 1987 Contract was not assignable except with written consent of the parties.

RMI also agreed to abide by the by-laws, guidelines and rules of Pine Island Resort. Under the restrictive covenants, the sales company's right to sell memberships ceased on July 1, 1995, or when 99% of the authorized 4,066 memberships were sold. The restrictive covenants also provided that members could transfer their memberships for a $25.00 transfer fee. Members could not use the sales company's resources or efforts to sell their membership so long as the sales company had memberships for sale.

On February 11, 1991, Pine Island, RMI, and Oxford, who is not involved in this action, entered into an agreement to settle a law suit between RMI and Oxford. RMI agreed to sell one membership held by Oxford for every four memberships sold on RMI's behalf. Oxford agreed to pay Pine Island one year's back dues of $175.00 for each of its membership RMI sold.

On March 27, 1991, RMI assigned its rights and interest to Federal Consumer Service, Inc. (FCS). FCS assumed the responsibility for providing monies for the remaining unfinished sites.

Pine Island filed suit against RMI and Richard Toohey for damages of $20,000 for breach of contract for failing to pay for unfinished sites and $21,875 back dues owed Pine Island under the settlement agreement. Pine Island also sought to enjoin RMI and its assigns from selling memberships and al-

leged RMI and its assigns had used poor sales tactics resulting in damage to Pine Island's reputation and a loss of memberships.

RMI filed a counterclaim alleging damages for breach of contract by interfering with sales and for tortious interference with a contract. FCS intervened and filed a petition seeking damages against Pine Island for tortious interference with a contract and an injunction preventing Pine Island from obstructing sales.

After the parties presented their evidence, the attorneys met in chambers and discussed the jury instructions. Pine Island alleges that the parties, while in chambers and without the court reporter, waived the reading of the instructions. The record shows Associate District Judge Larry Oakes returned to the courtroom and announced to the jury in open court as follows:

> All right, ladies and gentlemen, in chambers counsel and parties agreed, given the length of this trial and the fact that we have about sixty some pages of instructions here, rather than have me spend about 45 minutes or an hour reading all of those to you, you are going to get a copy of them sent up with you anyway, so I will just send up a copy of instructions and we will proceed and hearing closing argument from counsel, proceeding with Mr. Campbell.

None of the parties objected to the instructions or took exception to the judge's statement that the parties had waived the reading of the instructions.

Based on the jury's verdicts, judgment was entered. The journal entry stated that the jury returned the following verdicts: (1) RMI should no longer be allowed access to Pine Island to sell memberships; (2) for RMI's failure to pay Pine Island monies under the 1987 Contract, Pine Island is awarded $10,000 in damages against RMI; (3) for RMI's failure to pay Pine Island monies under the settlement agreement, Pine Island is awarded zero damages; (4) for Pine Island's breach of contract, RMI and Richard Toohey are awarded $5,000 in damages against Pine Island; (5) for Pine Island's interference with contractual rights, RMI and Richard Toohey are awarded $20,000 in actual damages and $20,000 in punitive damages; (6) for Pine Island's tortious interference with FCS's business relations, FCS is awarded zero damages; and (7) for RMI's breach of contract, FCS is awarded zero damages.

FCS appealed and RMI filed a cross-appeal. On appeal, FCS presents three propositions of error: (1) The jury verdict is internally inconsistent in that the jury found for FCS on the tortious interference with a contract but awarded zero damages; (2) The verdict in favor of Pine Island and against RMI is not supported by the evidence; and (3) The verdict denying RMI and its assigns (FCS) access to Pine Island to sell memberships is contrary to the evidence. RMI presents an additional two errors: (1) The damages set out in the verdicts granting RMI judgment against Pine Island for $5,000 for breach of contract and $40,000 for tortious interference with a contract are inadequate; and (2) the Court committed reversible error by not reading the jury instructions in open court. The Court of Appeals reversed the trial court's judgment finding that the trial court committed fundamental error by failing to read the jury instructions in open court. We granted certiorari.

### III. READING OF THE JURY INSTRUCTIONS

RMI argues the court committed fundamental error by not reading the jury instructions to the jury in open court. It further argues the record does not reflect that it expressly waived the reading of the instructions as the judge stated. Initially, we note our disapproval of a judge delivering the jury instructions without reading them in open court. However, we disagree that the judge committed reversible error.

The judge stated that because of the length of the instructions, the parties had agreed to their not being read. There was no objection to this statement. Thus, the record is clear that the parties not only failed to object to the procedures but expressly waived the reading of the instructions to the jury.

 Where a party fails to object to actions of the trial court, this Court will review the actions only for fundamental error. *Sellars v. McCullough*, 784 P.2d 1060, 1063 (Okla.1989). "Fundamental error is narrowly defined as a substantial misstatement of a fundamental legal principle which appears on the face of the instructions." *Wetsel v. Independent School District I–1*, 670 P.2d 986, 995 (Okla.1983). Unlike the statutory provisions of the order of trial proceedings in criminal cases, Okla. Stat. tit. 22, § 831 (1991), peremptory statutory requirements in civil cases do not mandate that the judge orally instruct the jury. Okla. Stat. tit. 12, § 577 (1991). Thus, the trial judge did not commit fundamental error by failing to read the instructions to the jury.

In addition, we find this Court's reasoning in *Ferrell v. State ex rel. Dep't of Highways*, 387 P.2d 129 (Okla.1963), appropriate here. "A party on appeal in the Supreme Court will not be permitted to secure a reversal of a judgment upon an error which he has invited and acquiesced in, or assume a position inconsistent with that taken in the trial court." *Id.* at 132 (quoting *Dills v. Calloway*, 175 Okla. 395, 52 P.2d 707, 709 (1935)). "The parties may make such stipulations as to the trial as are not in contravention of peremptory requirements of law or rules of court." *Id.* (quoting 83 C.J.S. Stipulations § 10(10)). "Parties may bind themselves by stipulation as to the instructions and verdict if the stipulation is not in contravention of peremptory statutory requirements." *Id.* at 133 (quoting 83 C.J.S. Stipulations § 10(11)).

RMI's argument that the jury's award in its favor and against Pine Island for breach of contract and tortious interference with a contract is inadequate "is essentially an argument that the jury award was the result of fundamental error" because the jury was not properly charged. Because we find that the trial court did not commit fundamental error in failing to read the instructions to the jury, RMI's position as to the inadequacy of the damages must fail.

### IV. ERRORS RELATING TO THE VERDICT

 In an action of equitable cognizance, this Court "presumes the district court's findings of fact are correct and will not disturb such findings on appeal unless they are clearly contrary to the weight of the evidence." *Krumme v. Moody*, 910 P.2d 993, 995 (Okla.1995). "In an action of legal cognizance, the credibility of witnesses and the weight and value of their testimony are questions exclusively for the jury to pass upon, and where there is any competent evidence reasonably tending to support the verdict, such verdict and judgment pronounced thereon, will be sustained." *Hamilton v. Allen*, 852 P.2d 697, 701 (Okla.1993) (quoting *Missouri–Kansas–Texas Railroad Co. v. Chief Equipment Co.*, 421 P.2d 841, 842 (Okla. 1966)).

### A. Access to Pine Island for RMI and its assigns (FCS) to sell memberships.

Both RMI and FCS argue that the finding that RMI, by and through its assigns and agents, had sold more memberships than it had purchased and that the verdict that RMI and FCS should be denied access to the resort are internally inconsistent and contrary to the evidence. The verdict form at issue was requested by Pine Island. It should first be noted there is nothing in the record showing that RMI or FCS submitted requested verdict forms or objected to the forms that were given.

RMI argues that the jury's conclusion that RMI and FCS should be excluded from Pine Island does not follow its finding that RMI and FCS sold more than the approximate 2200 unsold memberships RMI bought at the receivership sale. As to the finding that RMI and FCS sold more memberships than they owned, Richard Toohey, owner of RMI, testified that he had sold over 5,000 memberships. In a deposition, parts of which were read into the record, Richard Toohey stated that he had entered into about 5,000 contracts for sales of Pine Island memberships. The evidence repeatedly shows the RMI purchased about 2200 unsold memberships. Thus, the evidence supports the findings that RMI, by and through its assigns and agents, had sold more memberships than it purchased.

The conclusion that RMI and its assigns should be denied access to Pine Island is likewise supported by the facts. In addition to the fact that RMI and its assign, FCS, sold more memberships than RMI purchased, the record is replete with evidence of complaints concerning FCS's sales practices. There was testimony that Pine Island had received at least 50 written complaints about the sales company's practices. There were also inquiries from the Attorney General of Oklahoma. There were two lawsuits filed against FCS because of its sales practices. Richard Toohey sent FCS a letter cancelling FCS's right to sell membership because of "ongoing, unresolved marketing and sales practices."

In addition to the memberships being over sold and the questionable sales practices, the defendants, RMI and FCS, have not produced any evidence showing that they are entitled to access to Pine Island to sell memberships. The only agreement in this regard incorporates the bylaws which allows the sales company to maintain an office on the premises until 99% of the memberships are sold or until July 1, 1995, whichever is earlier. There is no evidence that RMI or its assigns has a right to be on the property for the purpose of sales after this date. As discussed above, the evidence shows that 99% of the memberships have been sold.

Both the finding that RMI and its assign, FCS, had sold more memberships that RMI was entitled to sell and the conclusion that RMI and its assign should be denied access to Pine Island for the purpose of conducting sales are supported by the evidence. Thus, we find no error in the jury verdict on this issue.

B. Verdict for Pine Island and against RMI for $10,000.

In the 1987 Contract, RMI agreed to pay for unfinished campsites. At the time of the agreement, there were approximately 12 or 13 campsites which at been started but were not completed. There were roughly another 195 campsites which had not been started. There was evidence that the standard in the industry was one campsite for every ten memberships. The average cost of a camp-site at Pine Island was $400.00. RMI has paid only $3,000 for the unfinished campsites. Thus, there was evidence that RMI owed Pine Island damages of $10,000 for the unfinished campsites.

RMI and FCS argue unfinished sites means only those sites which had been started but were not completed at the time of the 1987 Contract. As the jury found by implication, the term unfinished in the 1987 Contract is sufficiently broad to include those sites which were not yet started but necessary to provide appropriate facilities. Thus, we find no reversible error on this issue.

C. Verdict in favor of FCS and against Pine Island for zero damages.

■ FCS argues that the jury's award of zero damages is inconsistent with the finding that Pine Island tortiously interfered with the contract between it and RMI. Although we agree an inconsistency exists, FCS's claim must fail.

In *Baker v. Locke Supply Co.*, 736 P.2d 155 (Okla.1987), the jury returned a verdict in favor of the plaintiff on the issue of liability but assessed damages at zero. This Court fashioned the issue as whether the evidence supported an award of zero damages. After finding that the record contained conflicting evidence, the Court concluded that the record of the trial supported an award of zero damages even though the evidence was conflicting.

FCS relies on *Burkett v. Moran*, 410 P.2d 876 (Okla.1965), in support of its proposition that the verdict is facially inconsistent and requires reversal. In *Burkett*, the jury found the defendant liable in a personal injury action but failed to award damages for pain and suffering. This Court reviewed the record to determine whether there was evidence to support an award of zero damages. After finding that the uncontroverted evidence showed the plaintiff had suffered damages for pain and suffering and, thus, there was no evidence to support the verdict for zero damages, this Court ordered a new trial.

This Court in both *Baker* and *Burkett* reviewed the apparently inconsistent verdicts to determine whether there was evidence to

support the award of zero damages. We likewise look to the record in this case for support that the jury's verdict of zero damages is supported by the evidence at trial. FCS's claim for tortious interference is based on its ouster from Pine Island which FCS argues was improper. As stated earlier, there is evidence in the record to support a finding that RMI and FCS had sold more than the approximate 2200 memberships purchased by RMI, and that FCS should be denied access to the resort. Thus, the jury's finding that FCS suffered zero damages is supported by the record.

## V. CONCLUSION

In conclusion, the trial court did not err by failing to orally instruct the jury, and there is evidence in the record to support the jury's verdict. Thus, the judgment of the trial court is affirmed; the opinion of the Court of Appeals is vacated.

COURT OF APPEALS' OPINION VACATED; TRIAL COURT'S JUDGMENT AFFIRMED.

ALMA WILSON, C.J., and LAVENDER, SIMMS, HARGRAVE, OPALA, SUMMERS and WATT, JJ., concur.

KAUGER, V.C.J., concurs in result.