1998 OK 17

Iva SHOEMAKER; Mary Shackleford Wolfe; Baird Brown; Clair Brown; Eileen Segrest; and Norman S. Brown, Appellees,

v.

The ESTATE OF Lula FREEMAN, First National Bank and Trust Company of Tulsa, Executor; The Lula B. Freeman Trust, First National Bank and Trust Company, Successor Trustee; Gail C. Freundt; Stephen L. Corcoran; David J. Corcoran; Children's Medical Center of Tulsa; Oklahoma Medical Research Foundation; and the University of Tulsa, Appellants.

No. 85636.

Supreme Court of Oklahoma.

March 3, 1998.

Rehearing Denied July 1, 1998.

George H. Lowrey, Lowrey & Lowrey, Tulsa, for Appellant.

Thomas H. Hull, Tulsa, for Appellees.

HODGES, Justice.

¶ 1 This appeal is before this Court after a jury trial on the issues at law and before the judge on the issues of equitable cognizance. The parties are seeking to establish rights to royalties which accrued during a life tenancy. The issues in this case are: (1) whether a prior Court of Civil Appeals' opinion determined as the law of the case that the plaintiffs, as remaindermen, were entitled to the accrued royalties under the terms of the will which bequeathed the life estate and the remainder interest, (2) whether the plaintiffs' claims are barred by the doctrine of election, (3) whether the trial court erred in refusing to reform the trust on the grounds of mistake, (4) whether the trial court erred in instructing the jury on misrepresentation, and (4) whether the trial court erred in instructing the jury on exemplary damages.[1]

## I. FACTS

¶ 2 In 1928, Charles W. Brown executed a will in which he left two farms to his children Raymond Brown and Lula Freeman (Freeman) in equal undivided one-half inter-

ests. He left another farm to his grandchildren subject to life estates in Raymond Brown and Freeman. As to the farm subject to the life estate, the will provided that the life tenants were to "take, hold, and receive all rents, royalties, and bonuses from said land for oil, gas or other minerals under leases or contracts that accrue during their tenancy."

¶ 3 Charles Brown died on December 15, 1934, and Raymond Brown died in 1954. Freeman died in 1984. During the years before Freeman's death, the farm in which she had a life estate generated income from oil-and-gas royalty interests (accrued royalties) which were put into the trust. Also included in the trust was one of the farms that Freeman received under the terms of Charles Brown's will. Freeman also made contributions to the trust from income other than the royalties. The First National Bank & Trust of Tulsa, one of the defendants, was named trustee. During her lifetime, Freeman made gifts from the trust funds to the University of Tulsa, Children's Medical Center of Tulsa, the Oklahoma Medical Research Foundation, and the plaintiffs. Under the trust provisions, Freeman gave one-half interest in one of the farms to her niece Iva Shoemaker and one-half interest to her great nieces and nephews. The corpus of the trust was to be distributed as follows: $10,000 each to her great nieces and nephews; $2,000 to a doctor; $50,000 to Perry Shoemaker, her niece Iva Shoemaker's husband; and one-third of the residue to Children's Medical Center in Tulsa, one-third to Oklahoma Medical Research Foundation, and one-third to the University of Tulsa.

¶ 4 Freeman made several specific bequeaths in her will including a $5,000 gift to the Oklahoma Medical Research Foundation; one-half interest in her real property to Iva Shoemaker or her children; one-half interest to Norman Brown, Iva Shoemaker's brother, or his heirs; and the residue of her estate, $12,714.27, to the University of Tulsa. The plaintiffs claimed an interest in the accrued

1. Under the rules set out in *Hough v. Leonard,* 1993 OK 112, 867 P.2d 438, this Court may address the issues which were preserved and

briefed but undecided by the Court of Civil Appeals and not raised in the petition for certiorari.

royalties deposited in the trust, and the trustee took the position that the accrued royalties generated during Freeman's life belonged to the trust and could be distributed only to the designated charities under the terms of the trusts.

¶ 5 The plaintiffs also made several demands on the trustee that the farm given to them under the terms of the trust be deeded to them. Even though the trustee has never questioned the plaintiffs' right to ownership of the farm, the trustee has consistently refused to deed the farm to the plaintiffs.

¶ 6 In 1986, two years and two months after Freeman died but less than two years after making demand on the trustee, the plaintiffs filed suit seeking a declaratory judgment that they were entitled, as remaindermen under Brown's will, to the royalty income generated during Freeman's life estate. They also sought remedies for conversion and waste. Additionally, the plaintiffs requested the district court enter judgment against the defendants for the return of distributions previously made to the charities. Lastly, the plaintiffs sought that the accrued royalties be distributed to them rather than the named charities.

## II. PROCEDURAL HISTORY

¶ 7 On September 2, 1987, the trustee filed a motion for summary judgment on the first cause of action, arguing that any income from the royalties was the property of Freeman and subject to distribution under the terms of the trust. The remaindermen filed a response and a motion for partial summary adjudication on the issue of their entitlement to the royalties as remaindermen in Brown's will. On November 6, 1987, the district court denied the defendants' motion for summary judgment and granted the plaintiffs' motion as to the first cause of action only.

¶ 8 On December 19, 1988, after defendants' two motions to vacate the November 1987 order were denied, the trustee filed another motion for partial summary adjudication. The trustee urged that plaintiffs' claims for relief were barred by the statute of limitations. The trustee took the position that the time began to run on the causes of action when Freeman died. The plaintiffs countered that the time did not begin to run until the trustee denied their right to the royalties. The district court granted the trustee's motion on February 24, 1989.

¶ 9 On March 2, 1989, the plaintiffs filed a motion to reconsider, an application for a temporary restraining order, an application for relief under the Uniform Declaratory Judgments Act, an application to amend petition, and a petition for removal of the trustee. On May 3, 1989, the trustee filed another motion for summary judgment arguing that the plaintiffs were barred from asserting their claims by the equitable doctrine of election. On August 7, 1989, the district court denied the plaintiffs' motions and applications for relief, to amend, and for removal of the trustee. The district court granted the trustee's motion for partial summary adjudication ruling that plaintiffs' claim for conversion was barred by the statute of limitations. The district court also found that the plaintiffs were barred from asserting their claims by the equitable doctrine of election because they had previously received gifts from the trust.

¶ 10 Thereafter, both the trustee and the plaintiffs filed motions for partial summary adjudication on the issue of the disbursement of the royalties which remained in the trust. The charitable beneficiaries filed motions adopting the trustee's motions. On January 5, 1990, the trial court entered judgment for the defendants on the claims for affirmative relief.

## III. THE FIRST APPEAL— NUMBER 74,681

¶ 11 The plaintiffs appealed (Appeal No. 74,681). The order granting the plaintiffs partial summary adjudication on the issue of the declaratory judgment was not presented in the petition in error. However, two of the residuary beneficiaries raised the issue in their responses to the plaintiffs' petition in error.

¶ 12 On appeal, the Court of Civil Appeals found summary judgment was improper. The Court of Civil Appeals held that the statute of limitations did not begin to run

until the plaintiffs made demand for the accrued royalties. The Court of Civil Appeals also determined that the plaintiffs were not barred from making a adverse claim against the trust. In so holding, the Court of Civil Appeals stated:

> "The [plaintiffs] were owners of the trust assets because their Grandfather gave it to them in his will. Freeman only owned a life estate in the real property and royalties. She was without authority to distribute the remainder by creating a trust. The remainder belonged to the [plaintiffs]."

The Court of Civil Appeals denied rehearing. This Court denied the petition for certiorari. Thus, the decision of the Court of Civil Appeals became final.

¶ 13 On remand, the parties amended their pleadings. The plaintiffs sought damages for conversion and breach of trust. They also sought punitive damages. The trustee filed a counterclaim (1) asking that the trust be reformed to award the charitable beneficiaries the residue of the trust and for creation of a resulting trust based on a mistake that Freeman believed the royalties were hers to dispose of as she wished and (2) asking for damages for fraud because the plaintiffs concealed from Freeman the fact that they intend to challenge the gifts under the trust. The parties agreed that the charitable beneficiaries could retain the amounts given them during Freeman's life leaving the trustee as the only defendant at trial. At the time of trial, the trustee was still refusing to deed the farm to the plaintiffs. Thus, the trial judge ruled in favor of the plaintiffs on their claim for conversion and breach of fiduciary duty, leaving for the jury's decision whether the plaintiffs were entitled to punitive damages for conversion and, if so, in what amount. Also before the jury was the issue of whether there was a mistake in executing the trust and whether the plaintiffs had acted fraudulently. The jury found in favor of the plaintiffs and against the defendants on all claims presented to it and awarded punitive damages in the amount of $100,000. The trustee and the residuary beneficiaries of the trust appealed (Appeal No. 85,636 or present appeal).

¶ 14 In the present appeal, the Court of Civil Appeals vacated the trial court's judgement and reversed the trial court's order on the issue of the declaratory judgment finding that the order was an interlocutory order and that the trial court had misinterpreted the will. Thus, the Court of Civil Appeals found that the royalty income before her death belonged to Freeman and she could dispose of it as she pleased and that after her death, the royalty income belonged to the plaintiffs. The plaintiffs filed a petition for certiorari. The preliminary issue preserved for this Court's review is whether in the present appeal, the settled-law-of-the-case doctrine barred the Court of Civil Appeals from ruling on the issue of Freeman's ownership of the accrued royalties.

## IV. SETTLED LAW OF THE CASE

### A. Remaindermen's interest in the accumulated royalties under the will

¶ 15 The settled-law-of-the-case doctrine bars relitigation of issues that have been settled by a previous appellate opinion in the same case. *Panama Processes, S.A. v. Cities Service Company*, 1990 OK 66, ¶ 11, n. 27, 796 P.2d 276, 283 n. 27. Generally, all issues resolved by an appellate decision either expressly or impliedly become the law of the case and are not subject to review in a subsequent appeal. *Fent v. Oklahoma Natural Gas Co.*, 1995 OK 108, ¶ 13, 898 P.2d 126, 133. Thus we must examine the decision of the Court of Civil Appeals in Appeal No. 74,681 to determine if it decided the issue of the ownership of the accrued royalties.

¶ 16 In Appeal No. 74,681, the Court of Civil Appeals stated that under the terms of the will, the remaindermen were the owners of the accrued royalties, that Freeman owned only a life estate in the royalties, and that Freeman was without authority to determine how the accumulated royalties were to be disbursed after her death. The determination was the basis of the Court of Civil Appeals' finding in Appeal No. 74,681 that the equitable doctrine of election did not bar the remaindermen from asserting an adverse claim against the trust before returning the distributions previously made to them. The

finding by the Court of Civil Appeals in Appeal No. 74,681 that under the terms of the will, the remaindermen were the owners of the royalties which were accumulated during Freeman's life became the settled law of the case and was not reviewable in the present appeal. Thus, the Court of Civil Appeals incorrectly revisited the issue.

### B. Doctrine of Election

¶ 17 The defendants argue that the doctrine of election prevents the remaindermen from receiving the accumulated royalties because they received distributions from the trust during Freeman's life. This issue was also resolved by the Court of Civil Appeals in Appeal No. 74,681. The Court of Civil Appeals stated: "[The Appellees] contend that the Appellants were estopped from making an adverse claim against the trust since they had elected to receive distributions from it." The Court of Civil Appeals rejected this argument finding that the remaindermen were not claiming ownership under the trust, but ownership under the will. This issue was resolved in Appeal No. 74,681 and became the settled law of the case. Thus, it is not subject to review.

### V. REFORMATION OF THE TRUSTS

¶ 18 Next the trustee urges that the trial court erred when it refused to reform the trust. The general rule is that reformation of an instrument requires "mutual mistake or mistake on the part of one and fraud or inequitable conduct on the part of the other." *Griffin v. Griffin,* 1992 OK 36, ¶ 15, 832 P.2d 810, 813. Before a court will reform an instrument based on mistake, the evidence of the mistake must be clear and convincing. The evidence must be so convincing as to take the issue of mistake "out of the range of reasonable controversy." *Id.* at ¶ 14, 832 P.2d at 813. The trustee argues: (1) Freeman executed the trust with the mistaken belief that the royalties were hers to dispose of as she wished, (2) Freeman executed the trust as a result of fraud on the part of remaindermen Iva Shoemaker in not disclosing her intent to assert a claim against the trust after Freeman's death to recover the royalties, and (3) reformation requires only a showing of unilateral mistake.

¶ 19 An exception to the general rule requiring mutual mistake or unilateral mistake and fraud is where the trustor of a trust does not receive any consideration for creating the trust. Where there is no consideration for the creation of the trust, unilateral mistake on the part of the trustor is usually a sufficient ground for reformation. Restatement (Second) of Trusts § 333 cmt. e (1959); 4 Austin Wakeman Scott & William Franklin Fratcher, The Law of Trusts § 333.4 (1989); *see Green v. Votaw,* 192 Okla. 136, 134 P.2d 367, 371 (1943). In the present case, there is no evidence that Freeman received any consideration for creating the trust.

¶ 20 Even though a unilateral mistake is a sufficient ground for reforming a trust which was created without any consideration, the burden is nonetheless on the party seeking reformation to establish by clear-and-convincing evidence the mistake. *Griffin,* 1992 OK 36, ¶ 15, 832 P.2d at 813. The purpose of reformation for a mistake is to assure that the intent of the trustor is carried out. *See id.* at ¶ 16, 832 P.2d at 813. Thus, the mistake must be material and the party seeking reformation must establish that the trust as written does not reflect the trustor's intent or that the trustor would have used different terms but for the mistake.

¶ 21 The remedy of reformation is equitable. *Thompson v. Estate of H.H. Coffield,* 1995 OK 16, ¶ 10, 894 P.2d 1065, 1068. In an action of equitable cognizance, this Court will not disturb the trial court's findings unless they are clearly contrary to the weight of the evidence. *Pine Island RV Resort, Inc. v. Resort Management, Inc.,* 1996 OK 83, ¶ 18, 922 P.2d 609, 613.

¶ 22 The trustee contends that the following evidence shows that Freeman was mistaken about her ownership of the royalties and the mistake resulted in her making specific bequests to the plaintiffs and making the charities residual beneficiaries. Freeman never told the administrator of the trust to treat the royalties differently from other in-

come. The trustee believed the royalties belonged to Freeman and she never corrected the error. The administrator of the trust testified that Freeman believed the royalties were hers to dispose of as she wished.

¶ 23 On the other side, there is no mention of the royalties in the trust or in her will. There is no evidence of a statement, either oral or written, by Freeman that she believed the royalties belonged to her. Freeman's will, the original trust document, and the first and second amendments to the trusts all named charities as residual beneficiaries. In these documents, Freeman made several numerous specific bequests indicating that she understood how to execute her wishes that certain parties receive a stated amount of her estate. Clearly, she also understood that only if there was sufficient amount in her estate would the charities receive a distribution.

¶ 24 Even though Freeman did not own the accrued royalties and was not entitled to determine how they would be distributed, she was entitled to the possession of the royalties and the interest and income from the investment of the royalties. 3A W.L. Summers, The Law of Oil and Gas § 613 (1958); 31 C.J.S. Estates § 40 (19**). Freeman's action regarding the royalties are consistent with her right to possess the royalties and her right to the interest and income from their investment as they are of an understanding that she owned the royalties. The trustee has failed to show by clear-and-convincing evidence that Freeman was mistaken as to her entitlement to the royalties. The trustee has likewise failed to show that if Freeman was mistaken that the royalties did not belong to her, she would have altered the distribution of her property.

## VI. JURY INSTRUCTION ON MISREPRESENTATION

¶ 25 The trustee argues that the trial court erred in not giving Oklahoma Uniform Jury Instruction—Civil Instruction Number 18.5(1), which provides:

When dealing with another, a person has a duty to disclose a material fact if it is known to her and ... she and the other person are in a confidential relationship.

The trustee urges that the evidence established that Freeman and the plaintiff Shoemaker had a confidential relationship.

¶ 26 A confidential relationship arises when, under the facts, it is certain that the parties do not deal on equal terms and one party has an overmastering power and the other is weak and dependent. *In re Beal*, 1989 OK 23, ¶ 15, 769 P.2d 150, 154. Although Shoemaker had a close relationship with Freeman, Freeman never discussed her finances with Shoemaker. There is no evidence that Freeman depended on Shoemaker for advice, that Shoemaker had an overmastering power, or that Freeman was weak and dependent. On the contrary, Shoemaker was not named trustee, and it appears that Freeman's financial matters were handled by the trustee in this case. In fact, the trust was established because Freeman no longer wanted to manage her financial affairs, and she chose the trustee to manage them. Further, Shoemaker did not know that she was entitled to the royalties until after Freeman's death.

¶ 27 The evidence does not support a confidential relationship. Thus, the trial court did not err by not giving uniform instruction number 18.5(1). *Austin v. Cockings*, 1994 OK 29, ¶ 11, 871 P.2d 33, 35.

## VII. INSTRUCTION ON PUNITIVE DAMAGES

¶ 28 The trustee complains that instruction number 8 on punitive damages was misleading in that it allows the jury to consider punitive damages for breach of trust. Instruction number 8 is based on Oklahoma Uniform Jury Instruction—Civil Instruction Number 5.5. The trial court modified the uniform instruction to state the matters that the court had previously decided. Otherwise, instruction number 8 follows the Oklahoma Uniform Jury Instruction Number 5.5. Instruction number 8 is a correct statement of the law and application of the evidence presented. The jury awarded punitive damages to the plaintiffs in the amount of $100,000.

¶ 29 The trustee timely objected to the instruction but did not offer a proposed instruction to replace it. Where an instruction correctly states the law and it does not appear from the evidence that the jury was misled, a party wanting further or more specific instructions must request such an instruction. *Sarkeys v. Haas*, 1965 OK 83, ¶ 26, 402 P.2d 894, 899; *see St. John's Hospital & School of Nursing, Inc. v. Chapman*, 1967 OK 126, ¶ 48, 434 P.2d 160, 174. For an instruction to be fatal to the judgment, the complaining party must show from the evidence that the jury's verdict is a result of the confusion. *St. John's Hospital & School of Nursing*, 1967 OK 126 at ¶ 48, 434 P.2d at 174; *Buck Creek Coal Min. Co. v. Johnson*, 198 Okla. 664, 181 P.2d 1003, 1006 (1947).

¶ 30 The evidence supported an award of punitive damages for conversion. It is undisputed and is not an issue in this case that the plaintiffs were given a farm under the terms of the trust. The plaintiffs have demanded that the farm be deeded to them. The trustee has not, at least at the time of the trial, deeded the farm to the plaintiffs. The trustee has failed to provide any legal reason for its failure. Because instruction number 8 was a correct statement of the law and it does not appear that the jury was misled by the instruction, the trustee, having failed to submit an instruction, cannot now complain that the trial judge erred in giving the instruction. *Sarkeys*, 1965 OK 83, ¶ 26, 402 P.2d at 899.

## VIII. CONCLUSION

¶ 31 The Court of Civil Appeals' opinion in Appeal Number 74,681 came the law of the case on the issue of the plaintiffs' ownership of the accrued royalties under the terms of Charles Brown's will and on the issue of the doctrine of equitable estoppel. Thus, it was error for the Court of Civil Appeals to revisit the issue of the ownership of the accrued royalties. The trial court did not err in refusing to reform the trust where the evidence of a mistake on the part of Freeman was not clear and convincing. Further, the trial court did not commit reversible error in the jury instructions. The opinion of the Court of Civil Appeals is vacated, and the judgement of the trial court is affirmed.

CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; JUDGMENT OF TRIAL COURT AFFIRMED.

¶ 32 KAUGER, C.J., and HODGES, LAVENDER, HARGRAVE and ALMA WILSON, JJ., concur.

¶ 33 SIMMS and OPALA, JJ., concur in part and dissent in part.

¶ 34 WATT, J., with whom SUMMERS, V.C.J., joins, concurs in part and dissents in part:

I dissent only to Part VII and to Part VIII to the extent it affirms the award of punitive damages.