## LAYTON  v.  PURCELL.

### No. 35840.

Supreme Court of Oklahoma.

Feb. 2, 1954.

Truman B. Rucker, B. W. Tabor, and Joe Francis, Tulsa, for plaintiff in error.

Richard L. Wheatley, Vinita, for defendant in error.

BLACKBIRD, Justice.

Defendant in error, widow and administratrix of the estate of Elmer Purcell, deceased, obtained a verdict and judgment against plaintiff in error, as defendant, for damages said plaintiff sustained by reason of her deceased husband's death when his automobile collided with defendant's truck. Defendant has perfected this appeal. The parties will hereinafter be referred to by their trial court designations.

The collision occurred at about 6:30 P. M., while the deceased was driving west and defendant was driving east on Highway No. 10, a gravel road west of Welch, Oklahoma. Plaintiff's theory was that the collision was caused by defendant driving his truck on the wrong side of the road into the path of deceased's oncoming auto, while under the influence of an intoxicant and without clearance lights burning on the front of the truck.

By a part of his evidence, defendant attempted to show that deceased died from a heart attack rather than from injuries received in the collision, and that at the time of the collision, he was driving his car at or across the center of the road, and that this, rather than defendant's negligence, was the cause of the accident. The evidence was in conflict on this and other questions including those of whether defendant was intoxicated and whether either or both drivers were violating rules of the road at the time of the collision. There being no living witness to the collision, other than defendant, the jury's conclusion was necessarily based to some extent on what was indicated by the position of the cars, road marks and other circumstances existing after the collision occurred. The witnesses who inspected the vehicles and the marks on the road after the accident were not in agreement as to their observations and the deductions to be drawn therefrom. One of these was Jim Carl, who was employed as a highway patrolman on the date of the accident and was called to its scene soon after it occurred. Apparently, testimony was first elicited from him about two or three months previous to the trial. At the trial, he testified that he examined the scene

of the accident and saw tire marks north of the center of the road and that these tire marks led to the rear of decedent's car (where it apparently came into contact with defendant's truck) thus indicating that the decedent's car was at all times on its proper side of the road. Thereafter, on cross-examination, defense counsel inquired of said witness as to how he testified on the first and above-mentioned occasion that he gave testimony pertaining to the case. The questions and colloquy which followed between the witness, the court, defendant's counsel, Mr. Rucker, and plaintiff's counsel, Mr. Wheatley, appear in the case-made as follows:

"Q. Were you sworn as a witness back in November, please, Mr. Carl, just answer 'Yes' or 'No'.

\*    \*    \*    \*    \*    \*

"A. Yes sir.

"Q. I am going to ask you if this question was asked you: 'And were there any marks visible as to where Mr. Purcell's car—automobile, had traveled?' You recall that question being asked? A. No sir.

"Q. You recall you making this answer, 'No sir, there wasn't.' A. No sir.

"Q. You say that's not true? A. I am not saying it wasn't definitely. I don't remember, sir.

"Q. You don't remember it? A. That's right.

"Mr. Wheatley: Well now, if the Court please, I object, unless it is made certain whether or not they are talking about the marks made prior to the impact or after.

\*    \*    \*    \*    \*    \*

"Mr. Rucker: He was asked the same question two months ago, he was asked here, and he says absolutely contrary.

"By the court: Well \* \* \*

"Mr. Rucker: But was your recollection in November any better than it was no(w)t, Mr. Carl?

"By the Court: Let's keep the record straight. Let's read the question.

"Mr. Rucker: We are not asking this witness \* \* \*

"By the court: Well, I thought there was a question there about tracks being there after the point of impact, wasn't that in there?

"Mr. Wheatley: No sir, that's the reason why I raised my objection, to fix what question there they were asking.

"Mr. Rucker: I will tell you what I will do, I will have a transcript \* \* \*

"Mr. Wheatley: Let's see what the record said.

"By the court: That's the whole point right there.

"Mr. Rucker: Read all of the testimony from cross-examination.

"By the court: I don't believe this is the same question.

"Mr. Rucker: No, if your Honor please, he testified a few months ago and now about those visible marks.

"By the court: I don't believe he did, I don't know—the record shows that. I remember it definitely. Of course, the record speaks for itself, and you are entitled to have it, but I don't think it should be—I don't think there should be any mistake about it.

"Mr. Rucker: We will have a transcript—we will have it transcribed just so the Jury can have it read to them. Mr. Carl \* \* \*

"By the court: Ask the witness at this time.

"Mr. Rucker: Well, he has already answered it, Judge.

"By the court: Well, I don't think so.

"Mr. Rucker: That puts in this witness's mind ideas—if you will read that, and have Mrs. Jennings transcribe it, you will see he swore exactly opposite a few months ago as he did in this preliminary hearing.

"(Further proceedings out of the hearing of the jury.)

"By the court: Yes, but the Court \*   \*   \*

"Mr. Rucker: If your Honor please * * *

"By the court: Wait just a minute. I recall this witness's testimony on direct examination, and the Court doesn't recall any statement or admission with respect to any tracks made by the Purcell car prior to the point of impact.

\*    \*    \*    \*    \*    \*

"Mr. Rucker: I beg your pardon.

"By the court: And in your preliminary examination of this witness, the general question, after the question referring to the dual tires, you asked the witness the general question, and the witness asked whether before the point of impact, and you said, 'Either before or after.'

"Mr. Rucker: That's right.

"By the court: And then you asked the general question, and which made no reference to any tracks before or after the accident, and the Court thought at the time, and still thinks that the witness was answering on the preface you made in the prior question, and his explanation question assaults the character of your question, and I don't believe the witness is answering to the same thing that counsel has in mind. Thought so at the time and still think so, and I believe the only way to correct it would be to ask the witness.

"Mr. Rucker: They will have to do that on re-direct, Judge.

"Mr. Wheatley: He never distinguished between before or after the point of impact. It was a trick question to start with.

"By the court: Of course, you didn't object.

"Mr. Wheatley: I know.

"Mr. Rucker: I say it is not a trick question. I challenge the record. It will show this witness said in response to my question that he, at this time, says he can tell where the car, Purcell car, traveled either before or after, and in the preliminary he testified he couldn't find any—he could find no evidence of where the Purcell car had traveled.

"By the court: I don't believe there is any answer of this witness in the record any place in that regard.

"Mr. Rucker: I must respectfully disagree.

"By the court: You have that right.

"Mr. Rucker: In fact, I am going to right now ask you to transcribe it for me tonight, because it is as clear as a bell to me.

"By the court: O. K.

"Mr. Rucker: Well, do I have to do anything? I don't have to ask him any more questions.

"By the court: No."

One of the propositions defendant urges for reversal is that the trial court erred "in commenting on the evidence and in arguing the case for the plaintiff (as shown by the above excerpt from the record)." In attempting to support this contention, defense counsel charges that instead of allowing Patrolman Carl to make his own explanation, if he had one, to the asserted discrepancy between his testimony at the trial and that which he gave before the trial, the judge assumed the position of an advocate, attempting to tell the jury what was in the witness' mind, and "destroyed" defendant's right to impeach him. Counsel says the judge's remarks clearly gave the jury the idea that he was in sympathy with plaintiff's cause, and that defendant was engaged in "some type of sharp practice to confuse the witness." The cases of Bilby v. Owen, 74 Okl. 158, 181 P. 724; Snouffer v. First National Bank of Medford, 86 Okl. 190, 207 P. 452, and others are cited for the proposition that a trial judge should not give the jury any intimation of his opinion as to the weight and credibility of testimony.

■■■ Apparently no transcript of the sworn statement or testimony Patrolman Carl is said to have given previous to the trial, was ever made. If so, it was not introduced in evidence or incorporated in this record, so that we have no way of determining the correctness of defense counsel's inference that it was contrary to certain testimony of the witness at the trial. Also defense counsel does not point out specifically

to what he refers in his general assertion that the court's conduct "destroyed" his right to impeach this witness. The record discloses no ruling upon, or refusal of, counsel's right to question Carl for the purposes of impeachment, provided of course, that said witness was confronted with his alleged former statement, which counsel promised to have transcribed, but which he apparently never did. And, as will be seen from that portion of the record quoted, defense counsel interposed no exceptions to the remarks of the court of which he now complains. In Fowler v. Fowler, 61 Okl. 280, 161 P. 227, L.R.A.1917C, 89, this Court held:

"The question of whether the trial court during the trial asked questions indicating his opinion of the guilt of a defendant charged with contempt is not before us for review *where no objection or exception was taken to such questions.*" (Emphasis added.)

And in Tulsa Hospital Ass'n v. Juby, 73 Okl. 243, 175 P. 519, 22 A.L.R. 333, it was held:

"In order to predicate error on the remarks of the trial judge during the trial, *exceptions* must be taken to the remarks at the time they are made." (Emphasis added.)

See also Stocker v. Stocker, 173 Okl. 64, 47 P.2d 107. These cases follow the general rule in such matters. See 3 Am.Jur. 105, Sec. 373. In the Tulsa Hospital Ass'n case, supra, it was also held that such remarks will not constitute reversible error, unless it appears they are prejudicial to the rights of the complainant. This is also a general rule. See 3 Am.Jur. 605, Sec. 1053, and appropriate sub-headings in Vol. 53 and 58, Am.Jur., under titles "Trial" and "Witnesses." Besides failing to make the proper record upon which to predicate error, defendant has failed to demonstrate with any particularity wherein he was in anywise prejudiced by the trial court's remarks, and we are unable to perceive any inherent prejudice therein or abuse of a trial judge's proper discretion as "governor" of the trial. In this connection see 53 Am.Jur. 73, Sec. 74. We are not unmindful of the effect of the Twenty-Third Legislature's enactment of House Bill 142, Title 12 O.S.1951 § 630, upon the necessity of recording exceptions to trial court rulings generally, but we fail to find in the above excerpt from the record, any expression from defendant's attorney whereby he "makes known to the Court * * * his objection" as provided in said statute, to the remarks of the court about which he now complains. It will be seen from the above-quoted colloquy that, at one point, Attorney Rucker remarked: "That puts in this witness' mind ideas * * *", but this remark seems to have been addressed to the question opposing counsel was attempting to ask his witness Jim Carl, the patrolman, rather than being directed at anything the trial judge had said. At least, this remark cannot be positively and unequivocally identified as one directed at any particular statement made by said judge. Therefore, the cited statute cannot be held to apply and there is nothing to deter or withhold operation of the long established rules of appellate review above referred to.

The other proposition asserted by defendant to obtain reversal is that the court erred in refusing to admit competent evidence over his objection. Under this proposition he refers first to his effort to prove that immediately before the collision, deceased had a heart attack causing him to lose control of his car, and in this manner precipitate what may be termed an "unavoidable accident." In this endeavor, counsel presented the testimony of Dr. Bradshaw, who testified that he had examined the deceased about six months prior to the collision and found that he had a coronary or heart block. He further testified that he arrived at the scene of the accident soon after it occurred. This witness further testified as follows:

"A. I found a man dead in the car, and made an examination, found his body pretty well mutilated, bruised, cut up, with very little blood in the car.

"Q. Considering what? A. Considering a man that was killed in an accident.

"Q. Well, did you arrive at any opinion or conclusion that night as to whether or not he had suffered an attack prior to the accident.

"Q. All right, and what was your opinion and conclusion that night? A. That before the accident—I made up my mind * * *

"Q. Now then, of course, just give us your opinion. A. My reason was that the man was dead when he hit the car. He was a dead man when the cars went together.

"Q. Now Doctor, did you have occasion to see Mrs. Purcell that night? A. Yes, sir.

"Q. All right, did you have some conversation with reference to Mr. Purcell, Elmer Purcell, prior to the accident? A. Me and my wife and one of my hospital nurses went up to the hospital, and that's where—up there to meet her, and see if we could do anything to help her, and of course, she was very sad, which we knew.

* * * * * *

"Witness: We went up to the house from the hospital. The nurse and my wife came with me, went up to the house where she was at, and so shook hands with her and checked her, and she was very nervous, and give her some medicine, and so she said 'Well, I didn't want Mr. Purcell to go out that morning,' and 'He was sick the night before,' And she said he had had a pretty hard spell, and she said, 'He promised me, 'I will go today, but I will not go no more.' "

Both plaintiff and Wallace Purcell, her son by the deceased, denied all knowledge that the deceased had ever had heart trouble. They also denied they had ever told anyone that he had. When asked the direct question if deceased ever complained to her about his heart, plaintiff answered:

"He always said it wasn't his heart, it was his shoulder—the pain in his shoulder would hit him up here (indicating) and go around down in there, and I have got up a many a night and rubbed that pain on down, and then he would get all right."

Plaintiff also denied that the deceased was even sick or complaining on the night before the accident. She admitted she tried to persuade him not to go to work the day of the accident, but explained that she was wanting him to do certain work at home in connection with some chickens the couple was raising. The son, Wallace, affirmatively stated that deceased was in good health. Defense counsel attempted to impeach this witness by the testimony of the witness, Bob Branch, and, when opposing counsel's objection was sustained to Branch giving such testimony, defense counsel offered to prove by him that Wallace Purcell told him the morning after the accident that "he and his mother, or his mother, had tried to keep his father from going to work that day, because of his heart * * *" Apparently such statement, if made at all by Purcell, was not made in a private conversation with or directly to Branch, exclusively, but was heard by him at a place referred to as: "Neal's Store", where a group was gathered. On cross-examination, Purcell was asked about the statement as follows:

"Q. Now, Wallace, you remember talking to these fellows down in the store, Neal's store, the morning after the accident? A. No, I don't.

"Q. Well, you were down there, were you not? A. I just stopped there and got some gas was all.

"Q. You remember telling them that you and your mother had tried to get your Daddy to not go to work that morning, the morning that this accident happened, because he had had a bad heart attack the night before? A. No sir.

"Q. You say you did not say that? A. I didn't."

Defense counsel says the question of whether decedent had heart trouble and a heart attack causing his car to go out of control immediately before the accident was material in this action and constituted one basis of his client's defense, and its proof

would have exonerated him from all liability; that since the witness, Wallace Purcell, as above quoted, denied making the statement at Neal's Store, which they say indicated decedent had a heart attack the night before the accident, counsel should have been allowed to impeach him with testimony from Branch that said witness did make such a statement. Opinions of this Court cited for the general proposition that a litigant has the right to impeach testimony given on behalf of his adversary are Farmers' Union Co-op. Gin v. Hollis, 151 Okl. 134, 2 P.2d 951, and National Bank of Anadarko v. Oldham, 26 Okl. 139, 109 P. 75, together with 58 Am.Jur. p. 432. Plaintiff's counsel does not dispute this general proposition, but contends it is without application to this case because defendant's attempt to impeach the witness, Purcell, was upon a collateral issue; that no proper foundation or predicate had been laid for such attempt; and that the court's error, if any, in prohibiting it, was harmless, since it is apparent that the portion of Branch's testimony offered, but rejected, would not have changed the result of the trial.

Defense counsel also says the court erred in sustaining opposing counsel's objection to his attempt to elicit witness Purcell's opinion as to why a Dr. Zizmor had taken a cardiogram of his father's heart action, when, sometime before the collision, he had been to this doctor for what the witness termed "a hurting in one of his shoulders."

Defense counsel also complains of the trial court having refused to allow him to introduce, during the cross-examination of Wallace Purcell, certain photographs taken at the scene of the collision. Apparently he wanted to ask the witness certain questions about them and thereby elicit testimony to support one of defendant's theories as to the cause of the collision. The court's refusal to allow the introduction of the photographs at that time was not error. Counsel's endeavor was untimely and did not conform to the proper order of proof in such trials. See 12 O.S.1941 § 577, Subd. 3; Loyal Union Circle v. Rose, 117 Okl. 25, 245 P. 624; 53 Am.Jur. 106, Sec. 119. It has been held that a trial court may allow the introduction of evidence out of its proper order, within his discretion, and, where not prejudicial to the offeror's adversary; but a refusal to do so, is not ordinarily error. Here, the photographs were later introduced by defendant during his own case in chief, but his counsel never thereafter recalled the witness for any questioning concerning them; nor does counsel point out, nor do we perceive, any prejudice resulting to his client by his not being allowed to so examine the witness earlier, or while plaintiff was building his case in chief.

With particular reference to the alleged errors of the trial court in excluding a portion of the testimony of Mr. Branch, offered to impeach the testimony of Wallace Purcell, and in refusing to require Purcell to give his opinion as to why Dr. Zizmor had taken a cardiogram of his father's heart action, the admission of such evidence is also largely within the discretion of the trial court; and this court will not review a judgment on account of such alleged errors, unless it appears that said court has thereby abused his discretion to the manifest prejudice or injury of the complaining party. Rodgers v. Oklahoma Wheat Pool Terminal Corp., 186 Okl. 171, 96 P.2d 1040; 58 Am.Jur., "Witnesses", Sec. 676; 3 Am.Jur., "Appeal and Error", Sec. 1131. None of such testimony would have tended to prove or disprove any material issue in the case; nor would positive proof that the witness Purcell had made the statement at Neal's Store, attributed to him by Branch, have necessarily destroyed the effect of his testimony on such issues. His credibility would still have been "a matter lying peculiarly within the province of the jury." Holman v. Lozier, 100 Okl. 128, 227 P. 886. If Wallace Purcell's testimony constituted the only basis for the jury's verdict, defendant's contentions might be worthy of more consideration, but he does not contend that the verdict is not amply supported by an abundance of competent evidence and our examination of the record indicates that if this witness' testimony was wholly deleted or disregarded, there would still be sufficient evidence from other

sources to support the verdict and judgment. In view of these considerations, and the burden upon defendant, as the complaining party, to show that the alleged errors complained of were prejudicial, and to make it appear that the verdict or judgment would probably have been different had they not occurred, Hill v. Hill, 202 Okl. 483, 215 P.2d 553; Wilson v. Holmes, 185 Okl. 239, 91 P.2d 85; Byrd v. McKoy, 183 Okl. 209, 81 P.2d 315, we must hold that such errors, if any, do not warrant reversing the judgment and setting aside the verdict. The judgment of the trial court is therefore affirmed.

JOHNSON, V. C. J., and WELCH, DAVISON, O'NEAL and WILLIAMS, JJ., concur.

CORN, J., dissents.