**Dean JORDAN, Appellant,**

**v.**

**Timothy CATES, An Individual, and G–F–F Corporation, d/b/a Shop N Save, An Oklahoma Corporation, Appellees.**

No. 82782.

Supreme Court of Oklahoma.

Feb. 11, 1997.

Rehearing Denied April 2, 1997.

James A. Scimeca, Kimberlee T. Spady, Miller, Dollerhide, Dawson & Shaw, Oklahoma City, for Appellant.

Mark E. Bialick, Elizabeth J. Sloan, Durbin, Larimore & Bialick, Oklahoma City, for Appellees.

LAVENDER, Justice.

Certiorari was granted to review the Court of Civil Appeals' opinion which reversed the trial court's partial summary judgment (at the pre-trial stage) for G–F–F Corporation d/b/a Shop N Save [employer or Shop N Save] on the issue of negligent hiring. Employer seeks affirmance of summary judgment given below on the issue of negligent hiring and Jordan seeks reversal of the trial court's sustension of the employer's motion *in limine* to exclude evidence of the employee's past conduct. We hold that summary judgment is appropriate because the negligent-hiring theory imposes no additional liability on the employer where it stipulates its employee was acting within the scope of his employment when the harm-dealing altercation occurred. Also, when evidence has been adduced which establishes who the aggressor was, it was within the trial court's discretion to exclude evidence of the employee's past conduct if it would be unduly prejudicial.

## FACTS

Dean Jordan's son stole a blank check from him, forged Jordan's name and cashed the check at Shop N Save. The check was returned by the bank because of insufficient funds in the account on which the check was drawn. The bank's notice to Jordan did not reflect to whom the check was written. After receiving a second notice from the bank, he discovered his son had written the bogus check to the store.

Jordan testified that he immediately contacted the Shop N Save, asked for the store manager and told him what his son had done. According to Jordan, the manager told him that the check had not yet been returned and that he would be contacted when the store received it. Jordan agreed to pay the $20.00 and pick up the check. He further testified that *implied* in his agreement with the store manager was a waiver of the fee normally charged for returned checks.

Jordan heard no more about the check until he received a letter from Timothy Cates dated October 2, 1992. The letter stated that the check would be turned over to the district attorney's office if not picked up by October 1, the day before. Jordan immediately called the store, asked for the manager and explained that he received the letter the day after the deadline for picking the check up. Unknown to Jordan, Cates was not the manager with whom he had spoken the previous month. Cates told him that the check was at the store and that to retrieve it Jordan would have to pay $20.00 plus a $15.00 returned-check fee.

On his way to the Shop N Save, Jordan withdrew $35.00 from an ATM. When he arrived at the store, he asked for the manager and was greeted by Cates. Jordan testified he tried to convince Cates that the store manager had waived the returned-check fee. What happened next was disputed by the parties. Jordan testified that Cates turned his back and began to walk away. Jordan then shouted at him, inquiring about the check. At that point, Jordan testified that Cates turned around, walked to him, threw him on the floor, sat on his chest, struck him several times, grabbed his hair in one hand and beat his head on the floor.

Cates, on the other hand, testified that as he was walking away, he heard a noise and turned to find Jordan advancing towards him. Cates alleged that Jordan pushed him into a rail and he reacted in self-defense. A customer in the store, and the only person to witness the entire altercation, testified that Jordan jumped on Cates' back and Cates subdued him. The police officer (called to the scene) testified that Cates reported Jordan had "lunged" at him.

Jordan brought suit against both Cates and Shop N Save for the alleged battery, claiming the employer was liable both under the doctrine of *respondeat superior* and for the negligent hiring and retention of Cates. On appeal, appellant raised the following issues: (1) Did the trial court err in granting partial summary judgment on the negligent-hiring-and-retention issue? (2) Did the trial

court err in excluding evidence of Cates' earlier violent conduct together with evidence of his character? (3) Did the trial court err in failing to give a punitive damage instruction which allowed the jury to consider other similar acts by Cates? and (4) Did the trial court err in refusing to lift the cap on punitive damages?. We need only consider the first two issues as they are dispositive of this case.

## I.

## TRIAL COURT'S GRANT OF SUMMARY JUDGMENT ON NEGLIGENT HIRING AND RETENTION ISSUE

### STANDARD OF REVIEW FOR SUMMARY JUDGMENT

Rule 13, Oklahoma Statutes 1991, Title 12, Ch. 2, App. 1, provides, "If it appears to the court that there is no substantial controversy as to any material fact and that one of the parties is entitled to judgment as a matter of law, the court shall render judgment to said party whether or not he is the moving party." Here, the trial court found as a matter of law that employer was entitled to summary judgment on the negligent-hiring-and-retention theory of liability, in light of the stipulated fact that Cates was acting within the scope of his employment when Jordan was injured. We affirm summary judgment for the employer on this issue.

### EMPLOYER'S LIABILITY FOR ACTS OF EMPLOYEE

■ In Oklahoma it is well settled that to impose liability on an employer for its employee's intentional tort that (1) the relationship of master and servant must exist and (2) the tortious act must have been committed while the employee was acting within the scope of employment. *Rodebush v. Oklahoma Nursing Homes, Ltd.,* 867 P.2d 1241, 1244 (Okla.1993); *Brown v. Ford,* 905 P.2d 223, 230 (1995). Oklahoma's jurisprudence also holds that punitive or exemplary damages may be awarded against the principal for a servant's act under the doctrine of *respondeat superior. McDonald v. Bruhn,* 190 Okla. 682, 126 P.2d 986, 988 (1942); *Holmes v. Chadwell,* 169 Okla. 191, 36 P.2d 499, 500 (1934).

■ Here, Shop–N–Save stipulated that the harm-dealing altercation occurred during the course of Cates' employment and that employer would stand liable for damages (including punitive damages) if Cates was found guilty of battery. *Disregarding* any defenses available to the employer, no facts other than those establishing Cates committed a battery would be necessary to impose liability on Shop N Save.

The doctrine of *respondeat superior* provides a vehicle by which the employer can be held liable for its employee's intentional torts. Upon proof of assault and battery by the employee and of resultant damages, Jordan would have carried his burden of proof against Shop N Save. The court or jury could then have assessed punitive damages.

■ Appellant relies heavily upon cases that have allowed recovery for negligent hiring. Those cases are distinguishable from the case at bar. It is well settled that Oklahoma recognizes a cause of action for negligent hiring and retention. In *Mistletoe Express Service, Inc. v. Culp,* 353 P.2d 9 (Okla. 1960) we recognized a cause of action for the negligent hiring and retention of an employee. Not only was *respondeat superior* liability *denied by the employer* in that case, the issue—whether the person who committed the tort was a servant or an independent contractor—was strongly contested. The issue of the scope of employment for *respondeat superior* and negligent-hiring-and-retention liability purposes was submitted to the jury. Under the circumstances in *Mistletoe* both theories of liability were available to establish the employer's liability for its employee's intentional torts.

Likewise, in *Dayton Hudson Corp. v. American Mutual Liability Ins. Co.,* 621 P.2d 1155 (Okla.1980), a clear distinction was held to exist between the liability arising under *respondeat superior* theory and that resulting from negligent hiring. In *Dayton* we held that it is against public policy to force an insurance company to pay the punitive/exemplary damages assessed against its insured because, if the burden were shifted to the insurance company, punitive damages would serve no useful purpose. The purpose of punitive damages is to punish and deter. This objective is thwarted if the damages do

not rest ultimately on the party actually responsible for the wrong. *Id.* at 1159.

In *Dayton* we recognized an exception "for those torts whose liability is vicariously imposed on the employer for the wrong of his servant." *Id.* at 1160. The insurer can be indemnified for punitive damages by an employer whose willfulness or gross negligence results in the imputation of liability under the *respondeat superior* doctrine. *Id.* We then addressed the issue whether this exception applies to those *nonvicarious* liability cases where "recovery against an employer for the act of his servant is rested on prior knowledge of the servant's propensity to commit the very harm for which damages are sought, [where] the basis of liability invoked is not *respondeat superior* but rather the employer's own negligence in not discharging the unfit servant." *Id.* at 1161.

■ The distinction drawn in *Dayton* between *vicarious* and *nonvicarious* liability suggests that the theory of negligent hiring and retention is available in a nonvicarious liability case or in a case where vicarious liability has not been established. *In the case at bar, vicarious liability has been established through stipulation. Dayton's* discussion of negligence in not discharging the unfit servant has no application.

Because Shop N Save stipulated that Cates (its employee) was acting in the course of his employment when the altercation occurred, the case at bar is distinguishable. Our holding today is limited to those situations where the employer stipulates that liability, if any, would be under the *respondeat superior* doctrine, thereby making any other theory for imposing liability on the employer unnecessary and superfluous. Because vicarious liability can include liability for punitive damages, the theory of negligent hiring and retention imposes no further liability on employer.

## II.

## TRIAL COURT'S GRANT OF EMPLOYER'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF EMPLOYEE'S CHARACTER AND PAST CONDUCT

■ The next question we must address is whether the court improperly excluded evidence of Cates' earlier acts. To reverse a jury verdict based upon the exclusion of evidence, there must be a showing that such exclusion resulted in a miscarriage of justice or constituted a substantial violation of the appellant's rights. *Davon Drilling Co. v. Ginder,* 467 P.2d 470 (Okla.1970). The trial court sustained the employer's motion *in limine* and excluded evidence of Cates' earlier conduct. Jordan asserts that this evidence was necessary to determine whether Cates assaulted and battered him.

■ In *Oller v. Hicks,* 441 P.2d 356 (Okla. 1968), this court held that evidence of past conduct was admissible to determine who the *initial* aggressor was where there were no witnesses to the altercation. Here, there was a witness to the fracas between Jordan and Cates. The witness—a customer who was present during the event—testified about what occurred during the entire scuffle. *Oller* is hence factually distinguishable.

The question before us is not *whether* the evidence was admissible. Certainly, the evidence was relevant to the issue of punitive damages under the remaining intentional tort theory of liability. More precisely, the issue this court must decide is whether the exclusion of this evidence constituted reversible error. We hold that it did not.

■ A trial court has broad discretion in deciding whether the value of the proffered evidence outweighs the prejudice to the defendant. As stated in *Young v. Rabideau,* 821 F.2d 373, 377 (7th Cir.1987):

> A trial court possesses broad discretion in determining the relevance of proffered evidence and in balancing its probative value and unfair prejudice. The decision of the district judge will be accorded 'great deference' because his first-hand exposure to all the evidence and his familiarity with the course of the trial proceedings are the best qualifications for balancing the value of the evidence in its proper context. (Citations omitted.)

This court can reverse only upon finding that the trial court abused its discretion. In this case, the district court judge heard the offer

of evidence and considered it in light of the witness's testimony. The trial court was in the best position to judge the probative value and potential prejudice of the evidence of Cates' past conduct.[1] The court determined that this evidence was not properly admissible. We find no abuse of discretion as would warrant reversing the trial court's decision to exclude such evidence.

### III

### CONCLUSION

When an employer stipulates that an employee is acting within the scope of employment at the time of an altercation and punitive damages are available against it under the theory of *respondeat superior*, an additional claim for negligent hiring exposes the employer to no additional liability. Hence, the trial court properly gave summary judgment to Shop N Save on the latter theory of liability.

Where there was adduced evidence showing who the initial aggressor in an altercation was, it is not reversible error to exclude evidence of a party's character and past behavior to establish the antagonist's identity. This is specially true when the trial court determines the excluded evidence would be unduly prejudicial. The decision of the Court of Civil Appeals is **VACATED.** The ruling of the trial court is **AFFIRMED.**

SUMMERS, V.C.J., and HODGES, SIMMS, HARGRAVE and WATT, JJ., concur.

KAUGER, C.J., concurs in result.

ALMA WILSON, J., concurs in part; dissents in part.

OPALA, J., dissents.

1. *See* 12 O.S.1991 §§ 2403 and 2404(B). The pertinent terms of § 2403 are:
   Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, needless presentation of cumulative evidence, or unfair and harmful surprise.

   The pertinent terms of § 2404(B) are:
   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith....