1999 OK 87

**MAY–LI BARKI, M.D., INC., an Oklahoma Professional Corporation, Plaintiff–Appellee,**

v.

**LIBERTY BANK AND TRUST COMPANY, a national banking association, Defendant–Appellant.**

No. 89,902.

Supreme Court of Oklahoma.

Oct. 26, 1999.

Rehearing Denied Jan. 23, 2001.

Jared D. Giddens, Thomas J. Blalock, Bryan J. Wells, Self, Giddens, & Lees, Inc., Oklahoma City, Oklahoma, for Appellee.

John J. Love, Oklahoma City, Oklahoma, for Appellant.

WATT, Justice,

¶1 Between February 1985 and August 1988 plaintiff, May–Li Barki, M.D., an obstetrician and gynecologist, wrote fifty-seven checks totaling $385,639.90 on her corporate

account in defendant Liberty Bank and Trust Company to Capitol Federal Savings Bank. Dr. Barki's accountant, Gary Reed, was to see that these checks were deposited to Dr. Barki's credit in a tax deposit account to be used to pay Dr. Barki's taxes. Unbeknownst to Dr. Barki, Reed fraudulently endorsed each check not to Capitol Federal for Dr. Barki's credit, but to an account of his own in Capitol Federal.[1] The record does not explain why Capitol Federal accepted Dr. Barki's checks and deposited them to Reed's account, although they were not payable to Reed.[2]

¶ 2 Capitol Federal credited Reed's account and endorsed each check with its own endorsement. It is undisputed that Capitol Federal's endorsement of each check served to warrant its title to each check. Liberty then paid each check, relying on Capitol Federal's endorsement.

¶ 3 Dr. Barki did not discover Reed's defalcations until 1991. By that time Capitol Federal had failed and Dr. Barki made demand upon Liberty to make good her losses, which Liberty declined to do. Dr. Barki then brought suit against Liberty in the District Court of Oklahoma County claiming that the checks that Liberty had honored were not properly payable under the Uniform Commercial Code.[3] The trial court granted Liberty's motion for summary judgment on the ground that Dr. Barki's claims were barred by the three year statute of limitations. This ruling gave rise to the first appeal in this case, *Barki I*, in which the Court of Civil Appeals reversed the trial court. The court in *Barki I* held that Dr. Barki's cause of action was not barred by the applicable statute of limitations and that the checks were not "properly payable" to Reed under 12A O.S. § 4–401(1).[4] In *Barki I* the court held:

> We conclude as a matter of law that the checks in controversy in this appeal were not properly payable, for which Liberty is strictly liable unless it is relieved of liability by the claimed affirmative defenses.

[Footnote omitted.]

¶ 4 In *Barki I*, the Court of Civil Appeals remanded the matter to the trial court with directions to the trial court to determine whether Dr. Barki's own negligence had contributed to her loss and thus barred her from recovery, under 12A O.S.1991 § 3–406,[5] and whether Liberty could make out a defense under 12A O.S. § 3–405(1).[6] The trial court

---

1. Reed endorsed the checks with a rubber stamp as follows:
   > Pay to the Order of Capitol Federal Savings Bank, Oklahoma City, OK For Deposit Only Gary Reed Accounting Service Capitol Federal Savings Bank
   
   In January 1987 Reed changed the name of his Capitol Federal account to "Lincoln Nat'l Management Corp." but the account number remained the same.

2. After she wrote the checks for tax deposits that are at issue here, Dr. Barki wrote other checks for tax deposits totaling more than $300,000.00. All of the later checks were written within three years of the date upon which Dr. Barki brought suit. Dr. Barki settled her claims for the loss occasioned by Reed's misconduct respecting those later checks with institutions other than Liberty who were also defendants. Consequently, these later checks are not at issue in this appeal.

3. Articles 3 and 4 of the UCC were substantially amended effective January 1, 1992. The pre-revision version of the UCC, however, was applicable to this appeal as all transactions at issue here took place before the effective date of the amendments. Consequently all citations are to the pre–1992 version of the UCC.

4. Section 4–401(1) states in material part:
   > As against its customer, a bank may charge against the account any item which is otherwise properly payable from that account . . .

5. Section 3–406 provides:
   > Any person who by his negligence substantially contributes to a material alteration of the instrument or to the making of an unauthorized signature is precluded from asserting the alteration or lack of authority against a holder in due course or against a drawee or other payor who pays the instrument in good faith and in accordance with the reasonable commercial standards of the drawee's or payor's business.

6. Section 3–405(1) provides:
   > (1) An indorsement by any person in the name of a named payee is effective if
   > (a) an imposter by use of the mails or otherwise has induced the maker or drawer to issue the instrument to him or his confederate in the name of the payee; or
   > (b) a person signing as or on behalf of a maker or drawer intends the payee to have no interest in the instrument; or
   > (c) an agent or employee of the maker or drawer has supplied him with the name of

submitted the issue of whether Dr. Barki had been negligent to the jury. The jury found that Dr. Barki had not been negligent and returned a verdict for her and against Liberty in the amount sued for, $385,639.90. The trial court held, as a matter of law, that Liberty could not make out a defense under § 3–405(1). Liberty appealed, which appeal gave rise to the second Court of Civil Appeals opinion in this case, *Barki II.*

¶ 5 In *Barki II,* Division 2 of the Court of Civil Appeals held that Liberty was entitled to prevail as a matter of law under 12A O.S.1991 § 3–405(1) and, as a result, did not consider the other issues that Liberty asserted. As we conclude that the Court of Civil Appeals's holding on the § 3–405(1) issue in *Barki II* was erroneous, we will not only address that issue, we will also consider and dispose of the other issues raised in Liberty's briefs.

¶ 6   ISSUES

I. Did the trial court correctly hold that there was no defense available to Liberty under 12A O.S. § 3–405(1)?

II. Did the trial court correctly hold that Dr. Barki's cause of action against Liberty was not barred by the statute of limitations?

III. Did the trial court act within its discretion in excluding certain evidence at the trial?

IV. Did the trial court act within its discretion in denying Liberty's motion to proceed first in presenting evidence?

We answer "yes" to each question.

DISCUSSION

I.

¶ 7 Liberty insists that it is entitled to prevail under 12A O.S. § 3–405(1) because "Reed endorsed the checks in the name of Capitol Federal—the payee." We reject Liberty's analysis because the record shows that Reed made a restrictive endorsement on

the payee intending the latter to have no interest.

each of the checks so that each check was payable to his account in Capitol Federal, not to Capitol Federal itself.

¶ 8 In *Barki I,* the Court of Civil Appeals dealt with this issue, holding Dr. Barki's checks to Capitol Federal were not properly payable because Reed had not endorsed them to the payee. In *Barki I* the court relied on the reasoning of the West Virginia Supreme Court in *O'Mara Enterprises, Inc. v. People's Bank of Weirton,* 187 W.Va. 591, 420 S.E.2d 727 (1992).

¶ 9 The facts the West Virginia court considered were, as the Court of Civil Appeals observed, "strikingly similar" to those in this case. There, as here, a third party endorsed checks payable to a bank for deposit to the third party's own account in that bank, not to the payee bank itself. The payee bank then endorsed the checks for payment by the payor bank, despite the fact that the checks had not been endorsed in accordance with the maker's instructions. The court held that this failure made the checks non-negotiable and that the bank's own later endorsement did not serve to revive the negotiability of the checks. Based on its conclusion that the checks became non-negotiable when the third party presented them to the payee bank for deposit to his own account, the West Virginia court concluded:

It is axiomatic that absent negotiability, there is no transfer of rights to the funds represented by the commercial instrument. Since the checks were not negotiable because of non-compliance with UCC provisions regarding endorsement, the rights to the funds represented by the checks at issue were never transferred to the Bank. The Bank, therefore, became only a possessor of the checks and not a holder.

The Court of Civil Appeals's holding in *Barki I* is the law of the case and binding on the parties and is, therefore, not subject to review in this appeal. *Shoemaker v. Estate of Freeman,* 1998 OK 17 ¶ 15, 967 P.2d 871, 875

¶ 10   Section 3–405(1) applies only to "An endorsement by any person *in the name of a*

. . .

*named payee."* [Emphasis added.] Although the court in *Barki I* left open the issue of the availability to Liberty of § 3–405(1) as a defense, the effect of the *Barki I* court's holding is to render § 3–405(1) inapplicable. Liberty's argument that Reed's endorsement was in the name of the named payee is both contrary to the record and to the holding of the Court of Civil Appeals in *Barki I*. The trial court, therefore, correctly held that there was no defense available to Liberty under 12A O.S.1991 § 3–405(1).

## II.

¶ 11 Liberty argues that Dr. Barki's claims against it are barred by the statute of limitations because Dr. Barki asserted them more than three years after she wrote the checks. Dr. Barki claims that the statute of limitations did not start to run until she had demanded repayment and Liberty had refused because her cause of action did not arise until that time. Dr. Barki relies on *Allied Fidelity Insurance Company v. Bank of Oklahoma, N.A.,* 1995 OK 36, 894 P.2d 1101. We held in *Allied* that when a bank improperly charges its depositor's account no cause of action for repayment arises until after the depositor demands repayment and the bank refuses. The reason for the rule is that a bank and its depositor have a debtor-creditor relationship. Thus, when the bank wrongly pays, as it did here, it is regarded as having paid its own money, not its depositor's money.

¶ 12 Liberty seeks to distinguish *Allied* by claiming that while the instrument at issue there was a certificate of deposit, which was not a negotiable instrument, Dr. Barki's checks were negotiable. We reject Liberty's claim on this score because the Court of Civil Appeals expressly held in *Barki I* that Dr. Barki's checks were non-negotiable when Liberty received them from Capitol Federal. As noted in part I, Liberty is bound by the law of the case doctrine so its contention that Dr. Barki's checks were negotiable must fail, as must its attempt to distinguish *Allied.* The trial court, therefore, correctly held that

Dr. Barki's cause of action against Liberty was not barred by the statute of limitations.[7]

## III.

¶ 13 The issue before the *Barki II* jury was whether Dr. Barki had negligently failed to request copies of her checks, which Liberty had retained as a result of its depository agreement with Dr. Barki. The terms of this agreement were contained on a signature card signed by Dr. Barki in 1982. That 1982 depository agreement did not purport to bind Dr. Barki to any subsequent changes in the agreement when mailed to her by Liberty. No new agreement between Dr. Barki and Liberty was executed until 1990, a date after the losses at issue here had taken place. Nevertheless, Liberty claims that the trial court erred in excluding purported changes in the depository agreement that Liberty had mailed to Dr. Barki in 1985.

¶ 14 We hold that the trial court did not abuse its discretion when it excluded the 1985 mailings from evidence. Liberty did not show that Dr. Barki was bound by those mailings. Further, Liberty failed to demonstrate that the exclusion of those mailings was so substantial that it represented a miscarriage of justice or constituted a substantial violation of Liberty's rights. "The trial court is permitted broad discretion in determining the relevance of evidence. Decisions regarding relevance of evidence and its alleged prejudice to the other party will not be overturned absent an abuse of discretion." *Mills v. Grotheer,* 1998 OK 33 ¶ 3, 957 P.2d 540, 541, citing with approval, *Jordan v. Cates,* 1997 OK 9 ¶ 20, 935 P.2d 289, 293 (Okla.1997).

¶ 15 Liberty also claims that the 1985 mailings would have shown its custom of making checks available to customers. But Liberty called three employee witnesses to establish its customs and practices. Under such circumstances, Liberty's claim that the exclusion from evidence of the 1985 agreements from evidence was reversible error must fail. A trial court has broad discretion in deciding whether evidence should be

---

**7.** We expressly decline to address the question of when the statute of limitations begins to run with respect to negotiable instruments under circumstances like those in the case at bar.

admitted. The exclusion of cumulative evidence does not constitute reversible error. *Bryce v. Maples*, 1967 OK 42, 424 P.2d 93.

### IV.

¶ 16 Finally, Liberty argues that the trial court committed reversible error in refusing to change the order of trial and allow Liberty, the defendant, to proceed first. Liberty bases its contention on the fact that the court in *Barki I* held that Liberty would be strictly liable unless it was relieved of liability by establishing its affirmative defenses. Liberty's contention must fail because the trial court's decision to refuse to change the order of proof was within its discretion and Liberty made no showing that the trial court's failure to allow it to present its evidence out of order was prejudicial to it. "A trial court may allow the introduction of evidence out of its proper order, within his discretion, and, where not prejudicial to the offeror's adversary; *but a refusal to do so, is not ordinarily error.*" *Layton v. Purcell*, 1954 OK 38, 267 P.2d 547, 553. [Emphasis added.] Liberty's reliance upon *Williamson v. Holloway*, 69 Okla. 254, 172 P. 44 (1918), is misplaced. There, this Court reversed the trial court solely because, on its own motion, it directed a verdict for plaintiff before the defendant had rested its case, not because it changed the order of trial. Here, the facts are significantly different, as the jury heard the evidence of both parties and returned a verdict. Thus, the trial court acted within its discretion in refusing to change the order of trial.

CERTIORARI GRANTED, COURT OF CIVIL APPEALS OPINION VACATED, JUDGMENT OF THE TRIAL COURT AFFIRMED.

1. *See* the provisions of 12 O.S.Supp.1995 § 994 that govern certification of decided nisi prius claims sought to be reviewed in advance of judgment that disposes of all the claims in litigation.

2. The appeal was commenced by the Bank's 14 August 1997 petition in error.

3. The decision was certified on 15 July 1997 as a § 994 "judgment" on jury verdict which is ripe for immediate appellate review, *i.e.*, for review to be commenced in advance of nisi prius decision

SUMMERS, C.J., HARGRAVE, V.C.J., LAVENDER, OPALA, and WATT, JJ.—concur.

KAUGER, J.—not participating.

## SUPPLEMENTAL OPINION ON REHEARING'S DENIAL

OPALA, J.

¶ 1 The Bank complains on rehearing that the court's certiorari pronouncement overlooked an issue that stands unresolved. We are urged to now reach for review an alleged error in nisi prius determination of the prejudgment interest's amount. Because, for the reasons to be stated, *we hold that the issue tendered for resolution on rehearing was not before the court* and is hence barred from our consideration by the Bank's failure timely to press it by certiorari petition, *rehearing is denied.* The procedural tangle the case unfolds at this stage calls for a supplemental opinion that should provide valuable guidance for the bench and bar upon (a) the strictures of § 994[1] certification and (b) the extent of corrective relief that may be afforded the victorious party in the intermediate appellate court *without* a quest of its own for certiorari scrutiny of the issue desired to be examined.

### I

## THE PERTINENT ANATOMY OF CONTROVERSY NOW AT ISSUE

¶ 2 The appeal in this case[2] was brought from a certified § 994 "judgment"[3] that had been entered in a lawsuit by a physician against her bank to recover losses from wrongly honored checks.[4] The physi-

on the other (yet *unresolved*) claims in the district court action.

4. In multi-party/multi-claim cases, when one complete claim (or more) has been decided, but other claims stand unresolved, the court may advance the decided claim(s) for immediate review. 12 O.S.Supp.1995 § 994. *See in this connection Nestle Food Company v. Crews*, 2000 OK 58, ¶ 2, n. 2, ¶ 6, n. 12, 11 P.3d 205, 206–207; *LCR, Inc. v. Linwood Properties*, 1996 OK 73, ¶ 12, 918 P.2d 1388, 1392.

cian won. The Bank appealed from an order certified under the provisions of 12 O.S.Supp. 1995 § 994 [5]—which was brought here by its *first* petition in error. Some thirteen months later, the trial court *ruled on* the physician's quest [6] for computation of the prejudgment interest's amount that was due.[7] The Bank then brought its *next* (supplemental) petition in error for prosecution of what appears to be the *second* prong of the appeal. The latter was filed in the same cause.[8] The second petition sought review of the nisi prius-*determined quantum of prejudgment interest.* The Court of Civil Appeals [COCA], *deciding only* the issues tendered by the *first* petition in error, *reversed* the certified order by resolving the issues in the Bank's favor.[9] Shortly thereafter COCA *denied* the Bank's motion [10] for *leave to supplement* the record by including additional materials (needed for prosecution of the issue tendered by the Bank's supplemental petition in error) and *to brief* the later-assigned issue of its prejudgment interest obligation [11] which was initially injected into the appeal by the *supplemental petition in error.* Certiorari, sought here by the physician alone, raised for review only those issues which stood resolved by COCA's opinion. *The Bank did not press for certiorari relief from its own defeat (on its quest for prejudgment interest's review via COCA's postopinion order denying the Bank's motion for leave to supplement the record and to brief the issue advanced by the second petition in error ).*

5. The 15 July 1997 § 994 "judgment" is more accurately to be described as a § 994 certified order.

6. The physician's 27 April 1998 nisi prius motion to determine the time period for the accrued prejudgment interest and its rate.

7. The nisi prius 29 September 1998 order determining interest and costs.

8. The Bank's 29 October 1998 *supplemental petition in error.*

9. The 15 December 1998 COCA opinion.

10. The Bank's 29 October 1998 motion.

11. COCA's 4 January 1999 post-opinion order.

## II

## THE BANK INVITED THE PREJUDGMENT INTEREST ISSUE'S EXCLUSION FROM COCA'S OPINION BY PREMATURELY PROCURING A § 994 CERTIFICATION OF THE NISI PRIUS ORDER THAT WAS NOT YET FIT TO BE ADVANCED FOR APPELLATE REVIEW

¶3 The procedural tangle unveiled on rehearing began when the law firm initially representing the Bank secured the trial judge's § 994 certification for an order that had not yet advanced to judgment stage (upon the claim in contest).[12] Although that order may at first glance have appeared to bear the earmarks of a judgment, it actually fell short of having the requisite legal attributes, owing to its failure to include the *exact amount of prejudgment interest due the creditor.* The judgment's memorial recites that the rate of interest and the date from which prejudgment interest is to run are "to be determined" at a later time.[13] *There can be no judgment suitable for § 994 certification when the court disposes of but a portion of the contest by leaving unresolved any issue on the merits of the partly-decided claim.* The quantum of the obligor's entire liability must be determined.

¶4 In short, the certified order is *not* a judgment. Its obligation is not adjudged in a sum certain.[14] Prejudgment interest differs from postjudgment interest. The latter need not stand reduced to, and be expressed in, a lump sum. It is a continuing obligation *that runs at the statutory rate*

12. By statutory definition, a "judgment is the final determination of the rights of the parties in an action." 12 O.S.1991 § 681.

13. The 15 July 997 judgment on jury verdict.

14. *King v. Finnell,* 1979 OK 155, 603 P.2d 754. There, in a mortgage foreclosure suit, the order tendered for review was held unappealable because it fell short of a judgment. Nisi prius failure to determine (a) the amount of damages and (b) the attorney's fee *was held fatal to the order's attainment of judgment status. See Federal Deposit Ins. Corp. v. Tidwell,* 1991 OK 119, ¶¶ 1–2, 820 P.2d 1338, 1343 (Opala, C.J., concurring in result).

*from the date of judgment until paid.* The former, on the other hand, constitutes an integral part of the *total adjudged liability that is recovered* and stands in law as an item of damages owed for delayed satisfaction of an obligation on which it accrues.[15]

¶ 5 The Bank's error in prematurely securing a § 994 certification (in advance of the judgment on the physician's claim) was the culprit responsible for the presently unfolded procedural tangle. Neither the *three affected courts* nor the *two litigants involved* timely discovered the infirmity occasioned by the prematurely, and hence impermissibly, certified order.

## III

**THE PREJUDGMENT INTEREST ISSUE NOW PRESSED ON REHEARING WAS NOT BEFORE THIS COURT ON ITS CERTIORARI REVIEW OF THE COCA OPINION. THIS IS SO BECAUSE THE BANK HAD FAILED TO PRESERVE IT FOR CORRECTIVE RELIEF BY TIMELY BRINGING A PETITION FOR CERTIORARI TO REVERSE COCA'S DENIAL OF THE BANK'S CRITICAL MOTION IN ORDER TO PREVENT THE SUPPLEMENTAL PRONG OF ITS APPEAL FROM BECOMING FINALLY TERMINATED.**

■ ¶ 6 COCA's *denial* of the Bank's motion (for leave to supplement the record and to brief the prejudgment interest issue)

was the *functional equivalent* of the *supplemental* petition's *dismissal.* The motion's denial *terminated* all proceedings for prosecution of issues tendered by that (second) petition in error. It effectively barred the Bank from proceeding further on the second prong of its appeal.[16]

■ ¶ 7 The Bank contends on rehearing that the court should have *reviewed* the dismissal as one of the issues standing before it on certiorari. *We disagree.* The teachings of *Hough v. Leonard* [17] cannot be invoked here to preserve the COCA dismissal (of the second petition in error) for our certiorari scrutiny.[18] *Hough* saves for *sua sponte* review—one that may be conducted *sans* certiorari quest—only those issues that, though preserved for corrective relief on appeal, were left unaddressed by COCA. The issue we deal with here was *affirmatively dealt with by COCA's post-opinion dismissal.* It does not hence qualify for *sua sponte* review under the teachings of *Hough.*

¶ 8 The Bank's sole claim to review of the dismissal is its *cryptic statement in the response to the physician's certiorari petition.* The statement calls the court's attention to what it references as the *pending* prejudgment-interest issue. *That issue was then no longer pending. It was dead, having been finally extinguished by COCA's dismissal of the supplemental petition in error and by the Bank's failure timely to bring certiorari for review of that error. The review the Bank seeks today should have been sought by*

15. Prejudgment interest, when statutorily authorized, is an item of recovery that constitutes a part of the adjudged obligation. It is an element of the total liability adjudged. *Fleet v. Sanguine, Ltd.,* 1993 OK 76, 854 P.2d 892, 899; *Huff v. State,* 1988 OK 118, 764 P.2d 183, 188.

16. An order that precludes a party from proceeding further in the case (or precludes it from obtaining the relief sought) *terminates* the case in the court in which it was brought. *National Diversified Business Services, Inc. v. Corporate Financial Opportunities, Inc.,* 1997 OK 36, 946 P.2d 662, 668; *Gilliland v. Chronic Pain Associates, Inc.,* 1995 OK 94, 904 P.2d 73, 76; *Mayhue v. Mayhue,* 1985 OK 68, ¶ 3 n. 4, 706 P.2d 890, 893; *Moses v. Hoebel,* 1982 OK 26, ¶ 4 n. 1, 646 P.2d 601, 603; *Centorp Corporation v. Gulf Prod. Corporation,* 1938 OK 473, 83 P.2d 181, 185 syl.1.

17. 1993 OK 112, ¶ 15, 867 P.2d 438, 445 (*Hough* teaches that the party victorious before COCA is

entitled to this court's *sua sponte* review of all issues which, though properly preserved and briefed on appeal, *were not addressed by the appellate court*).

18. This case does not fit into the range of protection extended by *Hough, supra* note 17. By its supplemental petition in error, the Bank sought to preserve for appellate review *the prejudgment interest's quantum.* After the Bank was *unsuccessful* on this *addressed issue* before COCA, it did not seek corrective relief by timely bringing a certiorari petition for reversal of COCA's dismissal of its appeal's supplemental prong. The Bank's oblique reference to the prejudgment interest issue *in its response* to the physician's petition for certiorari (on issues in the *first prong of the appeal*) was insufficient to keep its *second prong* alive. This is so because *the latter prong's dismissal was not followed by certiorari quest.*

*pressing the COCA error (in the dismissal) through its own certiorari quest.*

¶ 9  Generally *no relief can be granted* from a nisi prius judgment to an appellee who did not counterappeal.  But no counterappeal is necessary to argue that, in spite of errors committed at nisi prius, the judgment is nonetheless impervious to reversal because it is correct in result.[19]  A party who does not petition for certiorari is in virtually the same position as the appellee who stands *sans* counterappeal.  Without its own certiorari petition, that party can advance only those arguments which would demonstrate the correctness of COCA's disposition.[20]  In short, the Bank may not succeed in having us treat today as *unaddressed* the alleged COCA error in its dismissal of the Bank's supplemental petition in error.  The prejudgment interest's quantum stood *addressed* by COCA as a tendered issue and *rejected* from consideration at the second-prong stage of the Bank's appeal.

## IV

### SUMMARY

¶ 10  COCA's post-opinion denial order *dismissed* that prong of the Bank's appeal which was sought to be prosecuted by supplemental petition in error.  *Hough v. Leonard* will not preserve that dismissal for this court's *sua sponte* review as part of the physician-initiated certiorari.  The Bank's own certiorari petition was a *conditio sine qua non*[21] for obtaining review of COCA dismissal's correctness and for securing relief from its adverse effect upon the continued viability of the Bank's second appeal prong.[22]

---

**19.**  *Woolfolk v. Semrod,* 1960 OK 98, `351 P.2d 742, 745; *Price v. Reed,* 1986 OK 43, 725 P.2d 1254, 1261.

**20.**  *Handy v. City of Lawton,* 1992 OK 111, ¶ 4, 835 P.2d 870, 876.

**21.**  The phrase *conditio sine qua non* means an indispensable condition, an absolute prerequisite.  BLACK'S LAW DICTIONARY, 4th ed., p. 1556.

**22.**  Today's *belated recognition* that the first prong of the Bank's appeal was *prematurely* brought does not require this court to *vacate*—as *coram non judice*—its 18 January 2000 opinion on certiorari and to *dismiss* the appeal.  For the meaning of the Latin phrase see *Collins v. Mid–Conti-*

¶ 11  In short, the Bank's rehearing petition addresses itself to an issue that was not before this court in the physician-triggered certiorari proceeding.  **REHEARING DENIED.**

¶ 12  HARGRAVE, C.J., WATT, V.C.J., HODGES, LAVENDER and OPALA, JJ., concur.

¶ 13  SUMMERS, J., dissents.

¶ 14  KAUGER and WINCHESTER, JJ., not participating.

¶ 15  BOUDREAU, J., disqualified.

---

*nent Pipeline Co.,* 1999 OK 56, 6 P.3d 1050, 1053 n. 8.  At a minimum, the COCA opinion of 15 December 1998 was entered here *in excess* rather than *in the absence of subject-matter jurisdiction;* this court's power of certiorari review is firmly attached to every form of COCA's appellate cognizance.  *Oklahoma Tax Commission v. City Vending of Muskogee, Inc.,* 1992 OK 110, 835 P.2d 97, 104 (Opala, J., concurring in judgment); *see also Stump v. Sparkman,* 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978).  More importantly, this court's certiorari pronouncement grants to the appealing Bank *no* corrective relief from the erroneously certified 15 July 1997 nisi prius order.  **The terms of the latter order are left entirely undisturbed.**